901 P.2d 1321

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Bob PANNELL, Defendant–Appellant.**

**No. 20995.**

Supreme Court of Idaho,
Boise, January 1995 Term.

July 10, 1995.

Charles D. Coulter, Boise, for appellant.

Alan G. Lance, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., argued, Boise, for respondent.

McDEVITT, Chief Justice.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

This is a criminal case in which Bob Pannell (Pannell) pled guilty to possession of more than three ounces of marijuana and reserved his right to appeal the denial of his motion to suppress evidence obtained in a search of his vehicle during an investigatory stop.

The district court found the following facts:

Around 9:00 or 10:00 o'clock on the evening of June 23, 1993, Valley County Deputy Sheriff Moses was ordered by the sheriff's dispatcher to a reported domestic disturbance at 97 Coy Lane near McCall. As he was en route, the dispatcher advised him that there were weapons in the house. A short time later he received an additional message that a gray Ford pickup truck operated by a drunken male had just left the scene. As he was approaching Coy Lane, Deputy Moses saw a gray Ford pickup moving at a speed of forty miles per hour in a thirty-five miles per hour speed zone. He asked his backup, McCall City Police Officer Hill, to stop the pickup while he continued to the scene of the disturbance. He also advised Officer Hill to be careful because weapons were involved. Officer Hill pulled the pickup over at the intersection of Boydstun and Rio Vista, about one and one-quarter miles from 97 Coy Lane. Officer Hill took no further action other than to observe the scene of the stop.

Deputy Moses continued to the address of the disturbance. When he arrived there, he was told that the person involved in the disturbance had just left and was drunk. Deputy Moses immediately returned to Boydstun and Rio Vista. At that time he saw the defendant seated by himself in the pickup. Officer Hill told Deputy Moses he had seen the defendant reach behind the seat.

Deputy Moses explained to the defendant that he was investigating a disturbance. The defendant said he was involved and that he and his wife had a problem. Deputy Moses could smell the odor of alcohol coming from the pickup. In response to the deputy's question, the defendant said he had been drinking. Deputy Moses asked him to step to the back of the pickup to do some field sobriety tests. As a result of the tests, Deputy Moses concluded that the defendant was on the borderline of being under the influence for driving purposes. He felt that it would be unsafe for the defendant to continue to drive. He also needed to complete his investigation of the disturbance, because the report of weapons, and because of the defendant's alcohol-impaired condition, Deputy Moses reasonably concluded that the defendant posed a risk of danger to law enforcement personnel and to other people if the deputy did not take action to insure that the defendant did not have ready access to a weapon at that time or immediately after the investigation was completed.

Deputy Moses told the defendant that he was going to drive the defendant to Coy Lane to complete his investigation and that he did not want the defendant to drive. Deputy Moses then patted down the defendant, cuffed him, and placed him in the patrol car. The deputy also decided to search the pickup for weapons, because,

according to his testimony, "if I go up there [to Coy Lane] and I let him go and he comes back to the vehicle and there's a weapon, for my safety and the people at the residence, if he went back there and done something and I didn't perform my job and check for weapons, then I could be held liable—or I felt I could be held liable for it." (Preliminary hearing transcript, Page 9, lines 7–12). He told the defendant he was going to search the pickup for weapons and asked if he had any problem. The defendant replied "No."

Deputy Moses then searched the passenger compartment of the pickup for weapons. During the course of his search he observed a backpack on the seat. The backpack was large enough to contain many types of weapons. The deputy opened it to see if there were weapons inside and found large plastic bags that smelled of marijuana and contained green leafy material, which he readily identified from his training and experience as marijuana. He seized the backpack and its contents and arrested the defendant for possession of marijuana.

In addition to the facts determined by the district court, several other undisputed facts are important to clarify the issues raised on appeal. At all relevant times, Deputy Moses was accompanied by Deputy Conrad. When Deputies Moses and Conrad first responded to Pannell's residence they confirmed that "[e]verything was all right at the residence." Pannell was stopped driving his vehicle at 9:57 p.m. It was ten to fifteen minutes later that he was placed in the patrol car. Pannell's vehicle was not moved until Pannell was in the patrol car, which then followed the other officer who was moving Pannell's vehicle; Pannell's vehicle was not searched until after it had been moved.

The district court held that the search of Pannell's vehicle was constitutional relying on *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The district court reasoned that the search was justified under *Long* because the officers had

a reasonable concern for their safety based on the fact that Pannell might have had access to the interior compartment of the vehicle at the end of the investigative stop were he not placed under arrest.

Because we conclude that Pannell was in fact placed under arrest, and that the officers did not have probable cause to justify that arrest and the attendant search, we reverse the district court's ruling denying Pannell's motion to suppress.

## II.

## ANALYSIS

This Court's standard of review for constitutional suppression issues is well-established:

When reviewing "seizure" issues, we defer to the trial court's factual findings unless they are clearly erroneous. We freely review, de novo, the trial court's legal determination of whether or not an illegal seizure occurred. United States Constitution, Amendment IV.

*State v. Bainbridge*, 117 Idaho 245, 247, 787 P.2d 231, 233 (1990) citing U.S. Const. amend. IV.

### A. *MICHIGAN v. LONG* ONLY APPLIES TO INVESTIGATORY DETENTIONS.

In denying Pannell's motion to suppress, the district court relied on *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the leading case on the issue of searching a vehicle pursuant to an investigatory *Terry* stop. In *Long*, the United States Supreme Court focused on the high risk to officer safety present in "roadside encounters between police and suspects" and ruled that:

[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on

"specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.* at 1049, 103 S.Ct. at 3481 (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). The Court explained that "a *Terry* suspect in Long's position [might] break away from police control and retrieve a weapon from his automobile.... In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Id.* at 1052–53, 103 S.Ct. at 3482 (citations omitted). It is clear that both rationales underlying the *Long* Court's conclusion were founded on the vulnerability of a police officer during the course of a close-range investigation in which the defendant has not yet been placed under custodial arrest. Therefore, if Pannell was under arrest at the time of the search, *Long* is inapplicable.

## B. PANNELL WAS ARRESTED.

 At the time that his vehicle was searched, Pannell was handcuffed and sitting in a patrol car. The determination of whether handcuffing Pannell and placing him in the patrol car transformed the investigative detention into an arrest demands that we examine all the surrounding circumstances:

> Admittedly, *Terry, Dunaway [v. N.Y.,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)], [*Florida v.*] *Royer* [460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)], and [*U.S. v.*] *Place* [462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)], considered together, may in some instances create difficult line-drawing problems in distinguishing an investigative stop from a *de facto* arrest. Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. But our cases impose no rigid time limitation on *Terry* stops. While it is clear that "the brevity of the invasion of the individual's Fourth Amendment inter-

ests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion," *United States v. Place, supra,* 462 U.S., at 709, 103 S.Ct., at 2645, we have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes. *United States v. Hensley,* 469 U.S. [221], at 228–229, 234–235, 105 S.Ct. [675], at 680–681, 683–684 [83 L.Ed.2d 604 (1985)]; *Place, supra,* 462 U.S., at 703–704, 709, 103 S.Ct., at 2642–2643, 2645–2646; *Michigan v. Summers,* 452 U.S. 692, 700, and n. 12, 101 S.Ct. 2587, 2593 and n. 12, 69 L.Ed.2d 340 (1981) (quoting 3 W. LaFave, Search and Seizure § 9.2, pp. 36–37 (1978)). Much as a "bright line" rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.

*United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). In *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), interpreting "*Terry* and its progeny," the United States Supreme Court held that:

> an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.... It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

*Id.* at 500, 103 S.Ct. at 1325–26 (citations omitted).

In only one other case have we been called upon to decide whether handcuffing a suspect converted an investigative detention into an arrest, *State v. Johns,* 112 Idaho 873, 736 P.2d 1327 (1987). In *Johns,* we held that

although an officer had placed the defendant in handcuffs, the defendant was only subject to an investigative *Terry* -stop and was not under arrest because "the use of handcuffs was a reasonable precaution for the officer's safety." *Id.* at 878, 736 P.2d at 1332. Critical to that conclusion were the following facts:

> Officer Hamilton [the officer who stopped Johns in his vehicle] was alone when he stopped a suspected murderer who, it was believed, had killed his victim with a knife. He had earlier observed the suspect remove one knife from the vehicle and when stopped Officer Hamilton found a second knife on the person of the suspect. When Officer Hamilton attempted to remove the knife from Johns, there was some slight resistance.

*Id.* at 877, 736 P.2d at 1331. Clearly, *Johns* was an extraordinary case where the substantial risk of imminent violence was readily apparent and justified the officer's use of "reasonable force" to maintain the "*status quo.*" *Id.* at 878, 736 P.2d at 1332 (quoting *United States v. Purry,* 545 F.2d 217, 220 (D.C.Cir.1976)). Likewise, the decisions upon which the *Johns* Court relied in reaching its holding were also cases in which there was a substantial risk of danger or flight such that the use of handcuffs did not transform the investigative detention into an arrest. *See Purry,* 545 F.2d at 220 (officers' decision to handcuff defendant as part of an investigatory detention was justified because, when contacted within area of armed robbery minutes after robbery occurred, defendant attempted to pull away from officer); *State v. Taras,* 19 Ariz.App. 7, 9, 504 P.2d 548, 550 (1972) (placing defendant in handcuffs justified as part of an investigative detention because defendant had fled from police and leapt from his moving vehicle).[1]

▌ In contrast, when faced with the same question and a less compelling suggestion of imminent danger, other courts have held that the use of handcuffs ·to restrain a suspect exceeded the bounds of an investigatory detention and amounted to an arrest. *See, e.g., United States v. Melendez–Garcia,* 28 F.3d 1046, 1052–53 (10th Cir.1994) ("[T]he use of force such as handcuffs ... is a far greater level of intrusion" which was unjustified where, during daylight vehicle stop, defendants complied with officers' order and officers "had no tips or observations that the suspects were armed or violent[.]"); *Oliveira v. Mayer,* 23 F.3d 642, 645–46 (2d Cir.1994) (in § 1983 action for unlawful arrest, handcuffing of suspect amounted to arrest because degree of force was unwarranted where six police vehicles converged on defendant who was only suspected of a property crime), *cert. denied,* —— U.S. ——, 115 S.Ct. 721, 722, 130 L.Ed.2d 627 (1995); *United States v. Del Vizo,* 918 F.2d 821, 824–25 (9th Cir.1990) (where defendant was compliant and only suspected of drug-trafficking, he was placed under arrest when several armed officers ordered him to the ground and then handcuffed him); *United States v. Delgadillo–Velasquez,* 856 F.2d 1292, 1295–96 (9th Cir.1988) (same).

▌ While we acknowledge that there was some evidence in this case suggesting that Pannell might have posed a threat to the officers' safety, we believe that the evidence was not sufficient to meet the high threshold needed to justify the use of handcuffs as part of an investigative detention. Although the radio broadcast to the officers was of a "domestic disturbance," there was no indication that physical violence was involved. As found by the district court, the dispatch broadcast warned the officers that there might be weapons in the house, without reference to Pannell's vehicle. Rather than resist the officers or attempt to escape, Pannell was fully compliant with the officers at all times during the extended period that he was detained at the side of the road before the handcuffs were applied. Despite the fact

---

1. The Court in *Johns* also relied on language in *United States v. Booth,* 669 F.2d 1231, 1236 (9th Cir.1981) ("[H]andcuffing a suspect does not necessarily dictate a finding of custody."). How- ever, the language in *Booth* was merely an aside as the court actually held that the handcuffed defendant in that case was in custody for purposes of *Miranda.*

that Pannell had been drinking, the officers did not feel he was so inebriated that he could be charged with driving under the influence of alcohol. Although Officer Hill had initially seen Pannell reach behind the seat of the vehicle, the pat-down search which immediately preceded the handcuffing uncovered no weapons of any kind. And while there was only a single suspect, Pannell, there were three police officers present at the scene to maintain safe order. Pannell was transported to Coy Lane by Deputy Moses while Deputy Conrad drove Pannell's truck and Officer Hill returned to McCall. Even though Pannell was only accompanied by Deputy Moses to Coy Lane, the decision to leave Deputy Moses alone with Pannell was made by the officers themselves. Based on this totality of circumstances, we hold that by handcuffing Pannell and placing him in a patrol car, the officers in this case employed a degree of force which exceeded that justified for an investigatory detention and which therefore amounted to an arrest. Therefore, contrary to the reasoning of the district court, *Michigan v. Long* is inapplicable as it pertains only to investigatory detentions.

## C. THE ARREST AND THE SEARCH INCIDENT TO THE ARREST WERE UNLAWFUL.

 A warrantless arrest is unlawful unless supported by probable cause. *State v. Kysar*, 116 Idaho 992, 993, 783 P.2d 859, 860 (1989) ("[R]easonable or probable cause for an arrest exists where the officer possesses information that would lead a person of ordinary care and prudence to believe or entertain an honest or strong suspicion that the person arrested is guilty."). In this case, it is not disputed that the officers lacked probable cause to believe Pannell had committed any offense at the point in time that he was handcuffed. Consequently, the arrest was unlawful. Because the search of Pannell's vehicle could only have been conducted as incident to that unlawful arrest, it too was unlawful. Accordingly, the evidence obtained as a result of that unlawful search must be suppressed.

## III.

## CONCLUSION

The ruling of the district court denying Pannell's motion to suppress evidence is reversed. The matter is remanded to the district court for further proceedings consistent with this opinion.

JOHNSON, J., and TRANSTRUM, J. Pro Tem., concur.

TROUT, Justice, joined by SILAK, Justice, dissenting.

Because I do not agree that the officers in this case effected anything more than an investigatory detention, I must respectfully dissent from the Court's opinion.

It is clear from the record and transcript that these officers were approaching a suspect who they believed had been involved in some domestic disturbance while intoxicated, and who might very likely be carrying a weapon. While they admittedly determined that Pannell was not so intoxicated that he should be arrested for driving under the influence, they certainly believed he could not operate a motor vehicle safely. They also determined that they should investigate the domestic dispute which caused them to be dispatched in the first place. In order to do so and in the interest of public safety, they decided to return to 97 Coy Lane with Pannell but did not allow him to drive his vehicle; rather the officers placed him in a patrol vehicle.

Officer Moses made clear in his testimony why he chose to handcuff and transport the defendant:

I told him (Pannell) that we needed to go back to the residence to investigate what went on at the residence, because I was just there briefly and not in the house. And he says okay. And I told him due to the fact of the alcohol, that he had been drinking and the field sobriety test, given he was right at a .10, maybe a little under, maybe a little over, and I did not feel

426

comfortable with him driving his vehicle back to the residence. And I told him I would transport him up there, and which he agreed and said it was fine.

Additionally, at the preliminary hearing, Officer Moses stated:

And I told him (Pannell) that for my safety and policy, that he'd be placed in handcuffs and patted down and placed in my vehicle, then we'd go back to the scene.

Officer Moses told the defendant he was going to drive him back to his residence to complete the investigation, and then handcuffed him and placed him in the patrol car in order to carry out the transportation safely.

The Court states that "at all relevant times, Deputy Moses was accompanied by Deputy Conrad." This statement is not correct because the only time relevant to this appeal is the time frame after Pannell was handcuffed. The Court later acknowledges that Officer Moses transported Pannell unaccompanied by any other officers, but apparently feels it is important that the officer chose to do so. The important point is that Officer Moses was alone in the patrol vehicle with an intoxicated and potentially violent suspect, a factor the Court found important in *State v. Johns.*

The Court also discounts the facts that Pannell appeared intoxicated and had been involved in a domestic dispute potentially involving weapons. These facts would lead any reasonable officer to conclude that the suspect should be restrained during transportation. The fact that Officer Moses was transporting Pannell back to the scene of a domestic dispute from which he had departed, raises the issue of the risk of flight, as well as concerns about returning Pannell to the scene of a possible crime. Officer Moses testified that he placed Pannell in the back seat of the patrol car, and that the back doors had handles enabling a person to open the door from the back seat. Again, the flight issue meets a concern in *State v. Johns,* cited by the Court.

The Court then reaches the conclusion that the officers handcuffed Pannell unnecessarily because he had been compliant thus far. In support of this finding, the Court cites cases involving handcuffing the suspect with no intention of transporting him. In such cases the officer was not handicapped due to the confines of a moving vehicle and was fully capable of subduing the suspect in case he became violent. None of the cases cited involve handcuffing a suspect in order to transport him to the scene of the dispute. The Court simply ignores the fact that Officer Moses handcuffed Pannell for transportation and safety purposes while continuing a legitimate investigation.

Quite reasonably, the officers did not place an intoxicated and potentially violent criminal suspect unrestrained in the back seat of the patrol car. The trial court's findings that the officers were apprehensive due to the nature of the call and the defendant's intoxicated state support its conclusion that the officers used the least intrusive means to effectuate the investigation. Thus, I cannot agree with the Court's opinion that the police utilized "a degree of force which exceeded that justified for an investigatory detention." *See State v. Wheeler,* 108 Wash.2d 230, 737 P.2d 1005 (1987) (given the legitimate concern for police safety when a suspect is being transported in a police car, the handcuffing of the suspect for the purpose of transporting him to the scene of a burglary was consistent with good police practice and common sense, and thus did not transform an investigatory stop into an arrest).

Having agreed with the trial court that this was an investigatory detention, I also believe it correctly applied *Michigan v. Long* to the facts of this case. The Court cites Officer Moses' testimony that he searched the vehicle for weapons because he believed the suspect would have access to a weapon inside the vehicle if the officers determined that he should not be placed under arrest. His concern stemmed from the call from dispatch indicating that weapons were involved. This concern is squarely addressed in *Michigan v. Long,* when the Supreme Court states that an officer may search a vehicle for weapons if he believes the suspect

will have access to them if he is not arrested. *Michigan v. Long,* 463 U.S. 1032, 1051, 103 S.Ct. 3469, 3482, 77 L.Ed.2d 1201 (1983) (citing *United States v. Powless,* 546 F.2d 792 (8th Cir1977), cert. denied, 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977). Therefore, I believe the decision of the trial court should be affirmed.