925 P.2d 1125

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Hector M. MARTINEZ, Defendant–Appellant.**

No. 22063.

Court of Appeals of Idaho.

Sept. 11, 1996.

Jensen & Burr–Jones, Burley, for appellant. Kent D. Jensen argued.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, argued, Boise, for respondent.

LANSING, Judge.

This is an appeal from an order denying a motion to suppress evidence. The defendant alleges that the challenged evidence was the product of his illegal detention and an illegal search of his automobile. We conclude that the detention and search were lawful, and therefore affirm the district court's order.

## I.  FACTS

The following facts are drawn from the district court's findings following an evidentiary hearing on Martinez's motion to suppress evidence.  On November 1, 1994, Agent Scott Baker of the United States Border Patrol was driving on Interstate 84 when he observed Hector Martinez's vehicle traveling at a high rate of speed with its emergency flashers on.  Agent Baker stopped the vehicle.  Martinez explained to Agent Baker that, due to mechanical difficulties, his vehicle would not operate at less than 50 miles per hour.  In response to questioning, Martinez said he was born in Eagle Pass, Texas, and now resided in Oregon.  Agent Baker knew Eagle Pass to be a town on the Mexican border.  Because of the mechanical problems, Martinez asked Agent Baker to follow him to the next town, and Baker agreed to do so.  While following Martinez, Baker radioed for information about Martinez and learned that he had been arrested in Ada County in 1993 on drug-related charges and had at that time identified his place of birth as Mexico.

After traveling some distance, Martinez exited the highway and stopped his car at a restaurant.  Agent Baker stopped as well and questioned Martinez further.  When asked if he had ever been arrested, Martinez initially denied having been arrested in Idaho.  He admitted it only after Agent Baker confronted him with information about his arrest in Ada County.  When Baker again asked where Martinez was born, Martinez reiterated that his birthplace was Eagle Pass, Texas, and he produced a card identifying that city as his birthplace.  From Baker's experience as a border patrol officer, he knew that cards of this type were often counterfeited and that the card was not a birth certificate.  When asked about his recent activities, Martinez said he was returning from a visit with relatives who lived in Eagle Pass.  Agent Baker asked whether Martinez had recently crossed into Mexico from Texas, and Martinez said that he had, but was evasive in responding to further questions about his travel to Mexico.  Martinez denied that his automobile had ever been in Mexico, on the recent trip or at any other time.  Baker observed that Martinez appeared to be very nervous and that, when Baker attempted to look through the car windows, Martinez stood in front of him, trying to impede his view.  Baker nonetheless noticed that the back seat was filled with objects "all the way to the top of the trunk deck" and that this cargo was covered with blankets.  The officer then asked Martinez for consent to search his car, which was refused.  Because there were no mechanical services available at this stop, Martinez asked the officer to continue to follow him to Burley.  Agent Baker again agreed and, en route, learned via radio that Martinez's car had entered the United States from Mexico three times within the previous six or seven months, the last occasion being at Eagle Pass, Texas, eighteen days earlier.  At that point Agent Baker radioed for assistance from the Idaho Bureau of Narcotics and the Tri–County Drug Task Force and requested that a drug-detection dog be made available in Burley, the locale of Martinez's next anticipated stop.  Martinez drove his car to a service station in Burley, and Agent Baker stopped as well.  Within moments, narcotics agents arrived.  Martinez was again questioned about his travel to and from Mexico.

He denied having driven his car across the border to Mexico. Agent Baker then informed Martinez that he was being detained for further investigation. Baker took Martinez's driver's license and told Martinez that, although he was not free to leave, he was not under arrest. Baker instructed Martinez to sit in Baker's patrol car while the officers completed their investigation. Agent Baker testified that he decided to detain Martinez at this point because he suspected that Martinez was smuggling illegal aliens or illegal drugs.

Meanwhile, another agent at the scene learned that a man named Hector Martinez had escaped from a work release program in Nampa. The officers were waiting for further information that would disclose whether this was the same Hector Martinez when Officer Terry Quinn of the Rupert Police Department arrived with a drug-detection dog. Officer Quinn directed the dog to check the exterior of Martinez's car, starting at the left rear corner of the vehicle and moving first toward the front on the left side and then back along the right side. Officer Quinn testified that when the dog reached the right rear door there was a change in his behavior. The dog's head began moving back and forth, he was sniffing harder, as if trying to find the source of an odor, and his tail was "wiggling harder." According to Officer Quinn, this represented a marked change in the dog's behavior. Officer Quinn informed Agent Baker that he believed the dog recognized an odor of narcotics coming from the automobile. With this information, Baker concluded that he had probable cause to search the interior of Martinez's car. The trunk was opened and the dog was allowed to enter. He went to the right corner of the trunk, behind the back seat, where he gave a positive indication. When the dog was let into the passenger compartment he again indicated the presence of drugs under the rear seat. Upon searching under the seat, the officers found several packages of marijuana.

Martinez was charged with possession of marijuana with intent to deliver, I.C. § 37-2732(a)(1)(B), and with failure to purchase a drug tax stamp, I.C. § 63-4205, -4207. He filed a motion to suppress the evidence found in the search of his vehicle, arguing that his detention and the warrantless search violated the Fourth Amendment to the United States Constitution. That motion was denied, and Martinez then entered a conditional guilty plea to the charge of possession of a controlled substance with intent to deliver, reserving the right to appeal the denial of his motion to suppress. The charge of failure to purchase a drug tax stamp was dismissed.

## II. ANALYSIS

On appeal, Martinez does not dispute the propriety of the initial stop on the interstate highway that was prompted by his excessive speed, nor does he take issue with Agent Baker's conduct in following Martinez to the next two stops. The issues raised by Martinez relate only to his detention at the service station in Burley and the subsequent warrantless search of his vehicle. Martinez argues that there was no objective basis for his detention and that the detention ripened into an arrest without probable cause. He also asserts that the officers lacked probable cause to conduct the search of his automobile.

When reviewing orders on motions to suppress evidence, we accept the district court's findings of fact if they are supported by substantial evidence, but we freely review the court's determination as to whether, on those facts, constitutional standards were satisfied. *State v. Aitken,* 121 Idaho 783, 784, 828 P.2d 346, 347 (Ct.App.1992); *State v. Emory,* 119 Idaho 661, 662, 809 P.2d 522, 523 (Ct.App.1991).

### A. The Initial Detention of Martinez Was Based upon Reasonable Suspicion

The Fourth Amendment to the United States Constitution guarantees freedom from unreasonable searches and seizures. A "seizure" occurs whenever a police officer restrains an individual's freedom to leave. *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, (1968); *Matter of Clayton,* 113 Idaho 817, 819, 748 P.2d 401, 403 (1988). An individual may be arrested without affront to Fourth Amendment protections only if there exists probable cause to

believe that the subject has committed an offense. *State v. Pannell,* 127 Idaho 420, 425, 901 P.2d 1321, 1326 (1995); *State v. Kysar,* 116 Idaho 992, 993, 783 P.2d 859, 860 (1989). However, not all seizures of the person must be justified by probable cause. The detention of a person for investigation of possible criminal activity is "reasonable" if the officer is aware of specific articulable facts, together with rational inferences therefrom, which warrant suspicion that the person has committed or is about to commit a crime. *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *United States v. Brignoni–Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975); *Terry, supra; State v. Rawlings,* 121 Idaho 930, 932, 829 P.2d 520, 522 (1992). Whether an officer had the requisite reasonable suspicion is determined from the totality of the circumstances. *State v. Zubizareta,* 122 Idaho 823, 828, 839 P.2d 1237, 1242 (Ct. App.1992); *State v. Rawlings,* 121 Idaho at 932, 829 P.2d at 522. In assessing the lawfulness of an officer's conduct, we give weight "not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883.

In the present case, the parties agree that the detention began when Agent Baker told Martinez that he was not free to leave and directed him to wait in the patrol car. We therefore examine the facts known to Agent Baker at that time to determine whether there existed reasonable suspicion of criminal activity. At that point, Agent Baker was aware that: (a) Martinez acknowledged that he had recently been in Mexico; (b) Martinez denied that his car had ever been in Mexico, but border patrol records showed that it had entered the United States from Mexico three times in the past half-year, the most recent occasion being just eighteen days earlier; (c) Martinez claimed he was born in Texas, but prior arrest records indicated that his birthplace was in Mexico; (d) Martinez carried a card showing Eagle Pass as his birthplace, but this card was not an official government document and was of a type that was frequently counterfeited; (e) Martinez had previously been arrested for possession of a controlled substance with intent to deliver and had initially lied about that arrest; (f) an object or objects were in the back seat of Martinez's car, covered by blankets; and (g) Martinez appeared very nervous and had tried to obstruct Agent Baker's view of the interior of his car. We conclude, as did the district court, that the foregoing facts and observations, together with rational inferences therefrom, reasonably warranted Agent Baker's suspicion that Martinez was involved in smuggling illegal aliens or controlled substances.

## B. The Investigative Detention Did Not Escalate Into an Arrest without Probable Cause

Martinez next asserts that even if his detention was initially reasonable, the officers' conduct transformed the investigative detention into an arrest unsupported by probable cause.

Once police officers make a lawful investigative stop, the scope of that stop must be reasonably related to the circumstances that justified the stop.

> An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.... It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

*Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983) (citations omitted). *See also Terry,* 392 U.S. at 29, 88 S.Ct. at 1883–84; *Pannell,* 127 Idaho at 423, 901 P.2d at 1324.

There is no bright line rule for determining when a *Terry* stop has escalated into an arrest. "Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *Pannell,*

127 Idaho at 423, 901 P.2d at 1324, *quoting United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). Factors to be considered in distinguishing an investigative stop from a *de facto* arrest include the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds. *State v. Knapp*, 120 Idaho 343, 347, 815 P.2d 1083, 1087 (Ct.App.1991). With this in mind, we evaluate whether events subsequent to the initial stop converted Martinez's investigative detention into an arrest.

One of the crimes suspected by Agent Baker was transportation of controlled substances. The district court found that approximately three to five minutes after Martinez stopped at the service station in Burley, the drug-detection dog arrived with his handler, Officer Quinn. Use of the dog was plainly aimed at effectuating the investigative purpose of the stop, and the period of detention while the officers awaited the dog's arrival was very brief. Further, the use of the drug-detection dog was one of the least intrusive means available to confirm or allay the suspicion that controlled substances were in the automobile. *See United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (subjecting suspect's luggage to a "canine sniff" was not a search); *Florida v. Royer*, 460 U.S. 491, 505–06, 103 S.Ct. 1319, 1328, 75 L.Ed.2d 229, (1983) (recommending use of drug-detection dogs to shorten length of investigatory detentions); *Dept. of Law Enforcement v. $34,000 U.S. Currency*, 121 Idaho 211, 824 P.2d 142 (Ct.App.1991) (use of drug-detection dog does not constitute a search). During the period that the drug-detection dog was checking the car, the officers were also waiting for identifying information that would tell them whether Martinez was the escapee from the Nampa work release program.[1] Martinez sat in the officer's patrol car as directed, but was not handcuffed, and weapons were never drawn. Both the duration of Martinez's detention and the investigative methods employed were reasonable, necessary for investigation of the suspected criminal activity, and not excessively intrusive. We agree with the district court's conclusion that the investigative stop did not evolve into a *de facto* arrest before the officers discovered controlled substances in Martinez's car and formally arrested him.

**C. There Was Probable Cause to Justify the Warrantless Search of Martinez's Vehicle**

We turn finally to Martinez's assertion that even if his detention was lawful, the warrantless search of his vehicle violated the Fourth Amendment's prohibition against unreasonable searches.

Warrantless searches are presumptively unreasonable, *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Woolery*, 116 Idaho 368, 370, 775 P.2d 1210, 1212 (1989), *cert. denied*, 511 U.S. 1057, 114 S.Ct. 1623, 128 L.Ed.2d 348 (1994); *State v. Huskey*, 106 Idaho 91, 93, 675 P.2d 351, 353 (Ct.App.1984), and the State bears the burden to demonstrate that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Weaver*, 127 Idaho at 290, 900 P.2d at 198; *Woolery*, 116 Idaho at 370, 775 P.2d at 1212. The State here relies upon the "automobile exception," which allows the warrantless search of a vehicle if the officer has probable cause to believe that the vehicle contains contraband or other evidence of a crime. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Gallegos*, 120 Idaho 894, 897–98, 821 P.2d 949, 952–53 (1991); *State v. Ramirez*, 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct.App.1991).

Because the use of the drug-detection dog to sniff the exterior of Martinez's automobile was minimally intrusive and did not constitute a search for Fourth Amendment purposes, *United States v. Place, supra; $34,000 U.S. Currency, supra*, the search here commenced when the officers opened the trunk of Martinez's car. The district court held that the officers' reason-

---

1. It was later determined that the defendant was not the same Hector Martinez.

able suspicion ripened into probable cause justifying the search when the drug-detection dog reached the right rear door of the defendant's vehicle and indicated the presence of illegal drugs. We find no fault with this conclusion. In *Gallegos,* 120 Idaho at 898, 821 P.2d at 953, the Idaho Supreme Court held that probable cause for a vehicle search developed when a drug-detection dog alerted. In the present case, the dog sniffed around the exterior of the vehicle and gave an indication only when he reached the right rear door. Although the dog's reaction did not include the specific digging behavior that he had been trained to perform when he definitely detected drugs, the dog's action, as interpreted by an officer trained to "read" the dog's responses, indicated that the dog detected the odor of a controlled substance coming from the inside of the car. This positive result, when combined with the other information in Agent Baker's possession, gave the officers probable cause to believe that Martinez's vehicle contained controlled substances. It was therefore proper for the officers to search the vehicle without a warrant.

## III. CONCLUSION

We conclude that Martinez's motion to suppress evidence was properly denied by the district court. Martinez's detention was lawful and did not escalate into an arrest without probable cause prior to the officers' discovery of controlled substances in Martinez's automobile. The search of the automobile was supported by probable cause to believe that it contained controlled substances, and the search therefore fell within the automobile exception to the warrant requirement. The district court's order denying the motion to suppress evidence is affirmed.

WALTERS, C.J., and PERRY, J., concur.