OPINION
{¶ 1} Plaintiff-appellant, City of Columbus ("city"), appeals from a judgment of the Franklin County Municipal Court granting the motion to dismiss/suppress of defendant-appellee, Lamberto T. Galang, Jr., and dismissing the city's complaint against him. Because the trial court erred in dismissing the complaint and in determining the point at which defendant was arrested, we reverse.
 {¶ 2} By complaint filed October 22, 2002, defendant was charged with one count of voyeurism in violation of Columbus City Code 2307.08, a misdemeanor of the third degree. In early December 2002, defendant filed a "Motion to Suppress/Dismiss Based on Lack of Probable Cause to Arrest." Following the city's response, the trial court conducted an evidentiary hearing on the motion.
 {¶ 3} According to the evidence before the trial court, on October 21, 2002, Officer Anthony Pagnanelli was dispatched to a call that someone was looking into the window of a residence. When he arrived, he saw two men; one had his knee in the back of defendant, who was face down on the ground. The man with his knee in defendant's back stated defendant was at the man's window, that the man "calmly went into the other room so as not to alarm the person that was looking into the window, and rushed outside." (Tr. 5.)
 {¶ 4} The officer told the man to remove his knee from defendant's back, asked defendant to stand, and helped defendant to a standing position. The officer and defendant then walked to the cruiser. At that time, the officer had one hand touching defendant, but was not grasping him. He walked defendant approximately 50 feet, from where he was first found, to the cruiser. According to the officer, defendant was not free to leave because he was being detained for further investigation. The officer testified, however, that defendant was not taken into custody at that point.
 {¶ 5} Just prior to reaching the cruiser, the officer told defendant "to just cooperate and everything would be fine." (Tr. 5.) At that time, defendant responded to the officer, "I am willing to cooperate in any way that I can. I have been arrested for this before. I have a problem, and I am in therapy at the time. And apparently it is not working." (Tr. 6.) At that point, defendant was not handcuffed. After defendant's statement, the officer felt he had cause to arrest defendant. The officer then frisked defendant, told defendant he was under arrest, and handcuffed him. Had defendant not made the inculpatory statements, the officer intended only to further investigate.
 {¶ 6} At the conclusion of the hearing, the trial court determined that when the officer led defendant from the scene, defendant was not free to leave; that once defendant was removed from the scene, he was in the custody of that officer and was under arrest. The trial court also noted no civilian witnesses testified to any trespass, and likewise no witnesses testified to any element of voyeurism. As a result, the trial court concluded, "[b]ased upon the testimony that was elicited today, I do not find probable cause for that arrest, and this case is dismissed." (Tr. 30.) The city appeals, assigning the following errors:
1. The trial court erred as a matter of law and to the prejudice of the city when the court remedied a finding of no probable cause to arrest by dismissing the case against the defendant.
2. The trial court erred, as a matter of law, in concluding that the defendant was under arrest once he was removed from the scene.
 {¶ 7} Preliminarily, the city concedes the officer lacked probable cause to arrest defendant. Accordingly, we do not analyze that aspect of the proceedings in the trial court. Rather, the city's first assignment of error contends that even though the officer lacked probable cause to arrest defendant, defendant's remedy is a motion to suppress the evidence obtained as a result of the illegal arrest, but does not include the trial court's further dismissing the city's complaint against defendant.
 {¶ 8} Generally, "the proper remedy for a Fourth Amendment violation is suppression of the evidence wrongfully obtained, not dismissal of the charges. `An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction.' United States v. Crews (1980), 445 U.S. 463, 474,100 S.Ct. 1244, 1251, 63 L.Ed.2d 537, 547." Blanchester v. Hester (1992),81 Ohio App.3d 815, 820. As a result, an "illegal arrest does not generally require dismissal of criminal charges, although it will require the suppression of evidence seized as a result of the arrest. Fairborn v. Douglas (1988), 49 Ohio App.3d 20, 21. In other words, even if the arrest was illegal, that conduct does not affect the validity of a subsequently filed affidavit, complaint, or indictment commencing criminal proceedings predicated upon the arrest." State v. Schultz (Mar. 11, 1992), Athens App. No. 1480. Accordingly, "[t]he illegality of an accused's detention by the police cannot deprive the government of the opportunity to prove the accused's guilt through the introduction of evidence wholly untainted by the police misconduct." Id.
 {¶ 9} With the foregoing law and the city's concession that the officer lacked probable cause to arrest defendant, the trial court properly should have granted defendant's motion to suppress, thereby depriving the government of the opportunity to use evidence obtained as a result of the illegal arrest. The trial court, however, not only suppressed the evidence obtained as the result of the illegal arrest, but dismissed the city's complaint.
 {¶ 10} In support of the trial court's dismissing the city's complaint, defendant observes that he moved not only to suppress the evidence obtained as a result of his illegal arrest, but because of the properly granted motion to suppress, the city lacked evidence to support the voyeurism charge. Noting that his motion clearly requested dismissal, defendant contends the city was obliged to bring to the evidentiary hearing the lay witnesses who would testify concerning the elements of voyeurism. Absent that testimony, defendant contends the trial court properly dismissed the city's complaint. The city responds that defendant admitted at the evidentiary hearing that "[t]he motion is to suppress any statements [defendant] made to the police at any time after his arrest. It has been briefed by the defense and the State. That's what we are here for." (Tr. 2.) Despite defendant's statement, the trial court recognized defendant had filed "both the motions to suppress and dismiss * * *." (Tr. 2-3.)
 {¶ 11} Whether the trial court believed it was hearing only a motion to suppress, or motions to suppress and to dismiss, is irrelevant. Although Crim.R. 12(A) and 12(B) provide for pretrial challenges to criminal proceedings by use of a motion to dismiss in appropriate circumstances, "only those motions capable of being determined without the trial of the general issue may be raised by motion before trial. * * * The issue as to the legal sufficiency of the evidence is not properly raised by a pretrial motion and that motion should have been overruled." State v. McNamee (1984), 17 Ohio App.3d 175, 176. (Emphasis sic.) In essence, "defendant is attempting to create in a criminal case the equivalent of a motion for summary judgment and there is no provision for such a motion." State v. Barchus (June 2, 1992), Wyandot App. No. 16-91-10.
 {¶ 12} Accordingly, the city was not required to present at the evidentiary hearing on defendant's motion the lay witnesses who would testify to the elements in support of the voyeurism charge against defendant. The trial court should have granted only a motion to suppress; it should not have granted defendant's request to dismiss the complaint. The city's first assignment of error is sustained.
 {¶ 13} The city's second assignment of error contends the trial court erred in determining the officer arrested defendant prior to defendant's inculpatory statement. To the extent the city challenges the trial court's findings of fact, we review to determine whether the findings are against the manifest weight of the evidence. By contrast, to the extent the city contends the trial court failed to apply the appropriate test or the correct law to its findings of fact, we review for an error of law. Lastly, if the trial court's findings of fact are not against the manifest weight of the evidence and the court has identified the appropriate law to be applied, the city may argue that the trial court incorrectly decided the ultimate and final issue raised. In that instance, we independently determine, without deference to the trial court's ultimate determination, whether the facts meet the legal standard. State v. Hawkins (Aug. 28, 2000), Holmes App. No. 99-CA-003.
 {¶ 14} Here, the critical issue is when the arrest occurred. The city contends the arrest occurred after defendant made his statement to the officer, and the officer then believed he had grounds for arresting defendant. Defendant, by contrast, contends the arrest occurred when the officer, touching defendant, led him to the cruiser. The distinction is significant to the parties, because it determines whether defendant's statements will be suppressed in the trial on the voyeurism charge against defendant.
 {¶ 15} The parties' arguments present the difficult issue of when an investigatory stop crosses the line into an arrest and seizure. Determination of that issue requires that we examine the Supreme Court's test for an arrest. Arrest signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime. "An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." State v. Darrah (1980), 64 Ohio St.2d 22, 24-26.
 {¶ 16} In the end, however, the point at which an arrest occurs depends on the circumstances of the particular case. State v. Finch (1985), 24 Ohio App.3d 38, 39; cf. State v. Martinez (1996), 925 P.2d 1125
("[t]here is no bright line rule for determining when a Terry stop has escalated into an arrest. * * * Factors to be considered in distinguishing an investigative stop from a de facto arrest include the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds"). Because the facts of a case determine when and where an arrest occurs, sometimes seemingly comparable facts produce different results. See State v. Pickett (Aug. 3, 2000), Cuyahoga App. No. 76295, dismissed, appeal not allowed,90 Ohio St.3d 1489 (concluding actions of police officer in asking a person to sit in police car do not automatically transform investigative detention into formal arrest); State v. Maze (June 8, 2001), Montgomery App. No. 18763 (concluding defendant in cruiser was an arrest if that was officer's intent).
 {¶ 17} Here, the officer stated he did not intend to arrest defendant. To the contrary, he intended only to detain defendant for further investigation. While the officer's subjective intent is not controlling, the additional facts presented at the evidentiary hearing support his subjective intent. More particularly, the officer did not use force in guiding defendant toward the cruiser, testifying he did not grasp defendant but only touched him. Nor did the officer pursue interrogation; rather, defendant apparently volunteered the statement. Only after the officer had heard defendant's statement did he decide to arrest defendant, and only then did the officer handcuff defendant and advise defendant he was under arrest.
 {¶ 18} The facts of this case parallel those of State v. Long (1998), 127 Ohio App.3d 328. There, the trooper came upon the defendant's car parked at the side of the road, with the defendant slumped over in the interior of the car. The trooper noticed the car keys were on the front seat where the defendant had been sitting, and the trooper grabbed them. The officer and the defendant then walked toward the rear of the vehicle, and the trooper asked the defendant whether he had anything on him. The defendant reached into his pocket, pulled out a "Centrum" bottle, handed it to the trooper and volunteered that it had amphetamines. At that point, another officer arrived on the scene, and the defendant was informed that he was under arrest.
 {¶ 19} While the trial court determined the defendant was "effectively arrested" when the trooper took possession of his keys and thereby precluded his leaving the scene, the appellate court concluded there "was no evidence adduced at the suppression hearing below to show that Trooper Kauffman intended to arrest [the defendant] when she removed the keys from the car seat. To the contrary, she expressly testified that `he was not under arrest at that time.'" Id. at 333. While taking the keys prevented defendant from leaving the scene, the officer explained that her sole reason for taking the keys was to detain him and "check him out." Because no other evidence contradicted that testimony, the court found no intent to make an arrest, but instead a brief investigatory detention under Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868.
 {¶ 20} Similarly, the officer here detained defendant for an investigatory stop under Terry; believing he did not have any basis to arrest defendant at that point, the officer did not intend to arrest defendant. Only after defendant made the inculpatory statement did the officer intend to arrest and, in fact, make an arrest. As in Long, no evidence contradicted the officer's testimony. Accordingly, the trial court erred in finding the officer arrested defendant when he guided him toward the cruiser for further investigation. The illegal arrest occurred after defendant's statement, when the officer advised defendant he was under arrest. The city's second assignment of error is sustained.
 {¶ 21} Having sustained both of the city's assignments of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
PETREE, P.J., and BROWN, J., concur.