**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47985**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: March 21, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| XUEWEN LIN, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for trafficking in marijuana, <u>affirmed</u>; orders denying motion to suppress and motion to continue, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Xuewen Lin appeals from the judgment of conviction following a jury verdict finding him guilty of trafficking in marijuana. Idaho Code § 37-2732(a)(1)(B). Lin argues that the district court erred when it denied his motion to suppress and motion to continue. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Corporal Cottrell began following Lin's truck based on suspicion that his windows were tinted beyond the legal limit. After Lin made a lane change without signaling for five seconds, Corporal Cottrell initiated a traffic stop. The stop occurred around 10:30 in the morning on the interstate highway. Upon approaching Lin's truck, Corporal Cottrell noted that Lin appeared nervous and was shaking. Lin told Corporal Cottrell that he had purchased the vehicle two days

1

prior, but then abruptly stopped himself and then said, "I mean recently." He indicated he was traveling from home in Missouri to see friends in Spokane. After explaining the purpose for the stop, Corporal Cottrell collected Lin's license and a receipt for registration.

Corporal Cottrell retrieved a window tint meter from his patrol vehicle and began measuring the tint of the windows on Lin's truck. As he returned to Lin's vehicle, Corporal Cottrell noticed that Lin was texting on his phone. Lin then shielded the device from Corporal Cottrell's view.

While Corporal Cottrell was measuring the window tint, an additional officer arrived on the scene. Corporal Cottrell requested that the second officer perform the administrative records check while Corporal Cottrell ran his drug detection dog around the exterior of Lin's truck. While that officer conducted the records check, Corporal Cottrell approached Lin who was again texting and shielding his phone from view. Corporal Cottrell asked Lin to exit the vehicle while he conducted the dog sniff. Lin did so, taking his wallet, keys, and phone. Corporal Cottrell then asked Lin if the items in the truck belonged to him. Lin hesitated, then answered that all the items in the cab belonged to him. When asked if the items in the bed of the truck belonged to him, Lin asked for an attorney.

Before proceeding with the dog sniff, Corporal Cottrell placed Lin in handcuffs. He then asked the second officer, who was waiting for returns on the records check, to seat Lin in the back of his patrol vehicle. The drug detection dog alerted to Lin's truck, and a subsequent search revealed, among other things, several bags with a substance the officers recognized as marijuana. Lin was arrested and charged with one count of trafficking in marijuana, I.C. § 37-2732(a)(1)(B), and another paraphernalia charge that was dismissed before trial.

Prior to trial, Lin filed a motion to suppress arguing that being handcuffed and placed in the patrol vehicle amounted to an unlawful arrest. The State argued that the seizure did not transform into an arrest until after the drug detection dog's alert. Following a hearing on the motion, the district court denied the motion to suppress.

After the suppression hearing and before the trial date, Lin's attorney filed a motion to withdraw and a motion to continue, asserting that there was a conflict of interest between Lin and himself. Lin's attorney also argued that the continuance was necessary because Lin wanted to hire another attorney who, because of his calendar, would be unable to prepare for the trial, which was set approximately two weeks later. A hearing on the motions was conducted during the pretrial

2

conference a week before trial. Lin wanted to address the court at the hearing on the motion, but the district court denied his request. The district court also denied both of Lin's motions.

The jury trial proceeded as scheduled. Lin was found guilty of trafficking in marijuana. Lin timely appeals.

## II.

## ANALYSIS

Lin claims that the district court erred in denying his motion to suppress and motion to continue. Specifically, Lin argues that placing him in handcuffs and placing him in the patrol vehicle constituted a de facto arrest because doing so was unreasonable under the circumstances and therefore constituted a violation of his Fourth Amendment rights. Further, Lin argues that the district court's denial of his motion to continue was based on an unreasonable and arbitrary insistence on expeditiousness. We address each of these contentions below.

### A.     Motion to Suppress

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The term "de facto arrest" describes a seizure of an individual that becomes so intrusive in manner or length that it exceeds the bounds of an investigative detention. *State v. Frank*, 133 Idaho 364, 367-69, 986 P.2d 1030, 1033-35 (Ct. App. 1999). In determining if an investigative detention becomes too intrusive and, thus, unreasonable, the Court considers: (1) the duration of the invasion imposed by the additional restriction; and (2) the law enforcement purposes served. *State v. DuValt*, 131 Idaho 550, 554, 961 P.2d 641, 645 (1998). Reasonable measures to ensure the safety of the officers or the public can be taken without necessarily compelling a finding that the suspect was in custody.

> Factors to be considered in distinguishing an investigative stop from a *de facto* arrest include the seriousness of the crime, the location of the encounter, the length

3

of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds.

*State v. Martinez*, 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct. App. 1996). There is no bright line rule for determining when a *Terry*[1] stop has escalated into an arrest. *Martinez*, 129 Idaho at 430, 925 P.2d at 1130. Courts must consider all of the surrounding circumstances to determine whether the methods used during the detention, like utilizing handcuffs, were reasonable. *DuValt*, 131 Idaho at 554, 961 P.2d at 645. If an investigative detention becomes unreasonable, the detention is transformed into an arrest. *State v. Pannell*, 127 Idaho 420, 423-25, 901 P.2d 1321, 1324-36 (1995)

Lin argues that the district court erred in denying his motion to suppress because the actions of the officers in placing him in handcuffs and seating him in the back of the patrol vehicle were unreasonable under the circumstances and constituted a de facto arrest. Corporal Cottrell stated that the measures taken were to promote officer safety and prevent flight. Lin argues these purposes could have been served in a less restrictive manner since there were three officers at the scene compared to only one suspect. Therefore, Lin asserts there was no need to place him in handcuffs as there were adequate officers on the scene to promote the safety of the officers and public. Further, Lin argues that his compliance with the officers and the nature of the suspected offense did not warrant such restrictive measures.

However, while there were at least two officers at the scene with a third arriving at some point after Lin was placed in handcuffs, the restrictive measures taken by the officers were not unreasonable under the circumstances. Both of the officers at the scene when Lin was handcuffed were pursuing tasks related to the traffic stop and could not divert their attention to Lin without prolonging the stop. Corporal Cottrell realized that the second officer was attending to processing Lin's paperwork and Corporal Cottrell would not be able to attend to Lin as he ran his drug-detection dog around the truck. Lin had exited his vehicle and was now standing on the shoulder of a busy interstate highway. While a third officer arrived on the scene at some point, it is unclear when he arrived and it appears that Lin was at least in handcuffs before his arrival, if not in the back of the patrol vehicle.

Further, while Lin argues that he was compliant with the officers' requests, he did display furtive and evasive behaviors during the stop that further support the reasonableness of the

---

[1]     *Terry v. Ohio*, 393 U.S. 1 (1968).

4

officers' actions. Lin was careful on two separate occasions to cover his phone from view while sending text messages and asked for an attorney when asked specifically about the contents in the bed of his truck. While Lin argues that these actions were an invocation of his constitutional rights and cannot constitute grounds for reasonable suspicion or probable cause, the relevant question prior to the handcuffing was not whether reasonable suspicion or probable cause existed. Rather, the question is whether the officers' actions were reasonable under the circumstances. Corporal Cottrell testified that the restrictive measures were used to promote officer safety and prevent flight. Lin's behavior up to that point in the stop supports the officers' safety concerns that Lin may have tried to flee or text for assistance, making the actions in restraining him to maintain the status quo reasonable.

Finally, the parties agree that the duration of the restriction imposed by the use of handcuffs was brief. Lin acknowledges that the approximately six minutes of restrictive detention time from when he was handcuffed to when the contraband was found in his truck was "short in duration." The State points out that the time from handcuffing to the alert of the drug dog, providing probable cause to justify the search of Lin's truck, was less than two minutes. That the period of employment of pre-arrest restrictive measures was brief further supports the district court's finding that the use of handcuffs did not change the detention to a de facto arrest. The motion to suppress was properly denied.

**B.     Motions to Withdraw and Continue**

The decision to grant a motion for a continuance rests within the sound discretion of the trial court. *State v. Ransom*, 124 Idaho 703, 706, 864 P.2d 149, 152 (1993). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018). Generally, unless an appellant shows that his or her substantial rights have been prejudiced by reason of a denial of his or her motion for continuance, appellate courts can only conclude that there was no abuse of discretion. *State v. Cagle*, 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct. App. 1995). Such prejudice can arise if denial of the continuance results in abridgement of an accused's right to counsel. *In Int. of Kinley*, 108 Idaho 862, 865, 702 P.2d 900, 903 (Ct. App. 1985).

5

The Sixth Amendment allows a defendant "who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). A "[d]eprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id.* at 148. The right to counsel of choice is qualified, however, because a trial court is granted wide latitude in balancing the right to counsel of choice against the needs of fairness and the demands of the court calendar. *Id.* at 152.

Lin argues that the district court violated his Sixth Amendment right to counsel by denying his motion to continue to allow him to substitute new counsel. In support of this argument, Lin relies on *State v. Rockstahl*, 159 Idaho 364, 369-70, 360 P.3d 373, 378-79 (Ct. App. 2015), where this Court affirmed the district court's appellate decision that the magistrate court's denial of a motion to withdraw and to continue the case was improper because the magistrate court failed to inquire into the breakdown in attorney-client communications or to consider the court's calendar or other factors. This failure constituted a violation of the defendant's Sixth Amendment rights. In this case, Lin argues that the district court likewise failed to inquire into the breakdown of communication between Lin and his attorney. Further, Lin argues that the district court erred by preventing Lin from speaking at the hearing and incorrectly reading a typographical error into the motion to withdraw.

However, this case has several factors that distinguish it from *Rockstahl*. First, Lin's motion to withdraw indicated a conflict of interest, but at the hearing his counsel cited a breakdown in the attorney-client communication and relationship. Lin's attorney limited the district court's ability to effectively inquire further into the breakdown of communication between Lin and his attorney when he stated: "I can't get into it too in depth because of privileged communications." Subsequently, Lin's counsel twice cited privileged communications as preventing him from being more forthcoming and indicated undisclosed problems that he could not "speak to the Court about at this time." Moreover, substitute counsel in *Rockstahl* was known and present at the hearing, and the time needed for the continuance was set. Here, outside of Lin's assertion that he had counsel ready to take his case if a continuance was granted, there was no showing that substitute counsel would be available. Further, the time needed for the continuance was open-ended, meaning the district court had no information on the impact granting the continuance would have on the court's calendar. In short, if the motion to withdraw and motion to continue had been

6

granted, Lin would likely not have new counsel, and been left without counsel at trial. Therefore, Lin has failed to show that the denial of his motions to withdraw and continue violated his right to counsel.

While Lin asserts that the district court was required to allow Lin to speak in support of the motions, the court does not have a duty to inquire into a defendant's reasons for wishing to substitute retained counsel. *State v. Daly*, 161 Idaho 925, 930, 393 P.3d 585, 590 (2017). Lin was represented at the hearing and his attorney had every opportunity to explain why the motions should have been granted. As to Lin's argument that the district court read a typographical error into the motion to withdraw, and thereby did not adequately address all of the cited bases for the motion, Lin's counsel had every opportunity to correct any such error and did not do so.[2]

Finally, the district court was not required to ignore its calendar or the time already set for trial. The district court noted that the suppression hearing lasted more than two hours and a motion for continuance to locate expert testimony at that time was denied. A mere two days later the motions to withdraw and continue, again citing no specifics, were filed. Trial was less than two weeks away at the time of filing and one week from the pretrial conference at which the motions were heard. Considering all of the circumstances, the district court did not abuse its discretion in denying the motions to withdraw and continue.

## III.

## CONCLUSION

The district court did not err in denying Lin's motion to suppress and motions to withdraw and continue. Therefore, we affirm the district court's denial of each motion as well as the judgment of conviction.

Chief Judge LORELLO and Judge BRAILSFORD **CONCUR**.

---

[2]     In any event, Lin has not shown that analysis of the cited rule of professional conduct would support withdrawal if the district court directly analyzed the motion under the rule.