181 P.3d 1249

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Jeffory A. STEWART, Defendant–Respondent.**

No. 33410.

Court of Appeals of Idaho.

March 28, 2008.

---

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for appellant. Jessica M. Lorello argued.

Molly J. Huskey, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for respondent. Molly J. Huskey argued.

LANSING, Judge.

The State appeals from the district court's order granting Jeffory A. Stewart's motion to suppress evidence of methamphetamine found in his car after a traffic stop. We affirm.

## I.

### BACKGROUND

Probation officer Julie Guiberson informed police that information from one of her probationers caused her to suspect that Stewart might be expecting a shipment of methamphetamine. Consequently, surveillance of Stewart's home was initiated. On April 27, 2006, at about 9 p.m., as Pocatello Detectives Chad Higbee and Newel Collins were conducting surveillance on Stewart's residence, Stewart drove away in his vehicle. The detectives followed, and when Stewart failed to signal a turn, they radioed a request for an officer in a marked patrol car to make a traffic stop. Officer Pete Boll responded and initiated the stop a little before 9 p.m. Shortly thereafter, Higbee and Collins arrived in their unmarked vehicle, followed by Guiberson and Detective Busch, who came in separate vehicles.

Stewart exited his vehicle, either of his own volition or at the request of one of the officers, and spoke with Higbee, Collins, and Guiberson while Boll confirmed the validity of Stewart's license information and wrote a ticket for failing to signal and failing to carry proof of insurance. During this encounter, one of the officers asked Stewart why his ex-wife had a no-contact order against him. Higbee also told Stewart that he was the subject of a narcotics investigation and asked Stewart for permission to search the vehicle.[1] Stewart consented to a search of the vehicle, but asked to be allowed to first remove some garbage from the interior. He was allowed to do so and, as he was looking for a place to deposit the garbage, Guiberson volunteered to throw it away in a trash bag in her car. Stewart handed the garbage to her, and she searched it while the other officers searched the vehicle. The officers found a methamphetamine pipe under the driver's seat, and Guiberson found methamphetamine hidden in the "garbage." Stewart was arrested and, during a subsequent interrogation, admitted that the contraband belonged to him. He also said that the methamphetamine was for his personal use, but that he sometimes sold it or gave it away.

Stewart was charged with possession of methamphetamine with intent to deliver, Idaho Code § 37–2732(a)(1)(A). He filed a motion to suppress the evidence derived from the search, arguing that the officers had unlawfully expanded the traffic stop and that his consent to the search was ineffective because it was involuntary and was given during an illegal detention. In response, the State did not take a position that the officers

---

1. Stewart testified that Higbee also told him that the officers would obtain a warrant if Stewart refused to consent to a search. Higbee, Collins, and Guiberson denied that such a statement was made. The district court's findings do not resolve this contradiction in the testimony.

had sufficiently reliable information about alleged drug activity to justify detaining Stewart for questioning on that basis, but maintained that Stewart's detention was valid throughout as a traffic stop. The district court granted the suppression motion. It found that although the initial stop was lawful and the duration of the stop reasonable, the evidence discovered during the search must be suppressed because the intensity of the stop became unreasonable and, alternatively, because Stewart's consent to the search was involuntary. The district court cited the presence of five police officers in four vehicles for a mere traffic violation, an officer informing Stewart that he was the target of a narcotics investigation, and questioning unrelated to the traffic offense that the court found was intended to disconcert Stewart as a prelude to seeking his consent to search the vehicle. The State appeals, arguing that these factors did not render the traffic stop unconstitutional nor coerce Stewart's consent.

## II.

## ANALYSIS

### A. Lawfulness of the Detention

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures of persons or property. Searches or detentions conducted without a warrant are presumptively unreasonable. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *State v. Butcher*, 137 Idaho 125, 129, 44 P.3d 1180, 1184 (Ct. App.2002). The State may overcome this presumption by demonstrating that the search or seizure fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *State v. Martinez*, 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct.App.1996). One exception to the warrant requirement is valid consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858 (1973); *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct.App.1997). The State argues here that because Stewart gave consent to the search of his car, there

was no Fourth Amendment violation. Stewart maintains, however, that the district court correctly found that Stewart's consent was invalid both because his detention had become unlawful before he gave consent and because the consent was involuntary.

We address first whether Stewart's detention became unlawful. A consent to search that is given during an illegal detention generally is tainted by the illegality and is ineffective. *State v. Gutierrez*, 137 Idaho 647, 652, 51 P.3d 461, 466 (Ct.App.2002); *State v. Zavala*, 134 Idaho 532, 535, 5 P.3d 993, 996 (Ct.App.2000).

A seizure that implicates the Fourth Amendment occurs when an officer, by means of physical force or show of authority, restrains a citizen's liberty. *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999); *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct.App.1991). A seizure may take the form of either an arrest or an investigative detention. An arrest is a full-scale seizure of the person which in some circumstances is permitted without a warrant if the officer has probable cause to believe that the individual has committed a crime. *Ferreira*, 133 Idaho at 479, 988 P.2d at 705; *State v. Zapp*, 108 Idaho 723, 726–27, 701 P.2d 671, 674–75 (Ct.App.1985). An investigative detention is a seizure of limited duration to investigate suspected criminal activity and does not offend the Fourth Amendment if the facts available to the officer at the time gave rise to reasonable suspicion to believe that criminal activity was afoot. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705; *State v. Dice*, 126 Idaho 595, 599, 887 P.2d 1102, 1106 (Ct.App.1994); *State v. Knapp*, 120 Idaho 343, 347, 815 P.2d 1083, 1087 (Ct.App.1991).

A traffic stop constitutes a seizure of the motorist and is therefore subject to Fourth Amendment strictures, but because it is limited in scope and duration, it is analogous to an investigative detention and is analyzed under the principles set forth in *Terry*. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660, 667 (1979). An investigative detention based on reason-

able suspicion must be conducted in a manner that is reasonably related in scope to the circumstances which justified the interference in the first place. *Terry,* 392 U.S. at 20–21, 88 S.Ct. at 1879–80, 20 L.Ed.2d at 905; *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).[2]

The State argues that because the restrictions on Stewart's liberty during the detention did not rise to the level of a de facto arrest—which Stewart concedes—the seizure was *ipso facto* within the scope of a permissible investigative detention. We conclude, however, that no such rigid classification defines the boundary between permissible and impermissible detentions. There is no bright line demarcating an unreasonably intrusive investigative detention from a reasonable one. Instead, "common sense and ordinary human experience must govern over rigid criteria." *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1574, 84 L.Ed.2d 605, 614 (1985). *See also State v. Pannell,* 127 Idaho 420, 423, 901 P.2d 1321, 1324 (1995).

It is true that both the United States Supreme Court and this Court have used the term "de facto arrest" to describe seizures of individuals that exceeded the bounds of an investigative detention. *Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605; *Ferreira,* 133 Idaho at 480, 988 P.2d at 706; *Martinez,* 129 Idaho 426, 925 P.2d 1125. It does not follow, however, that any restraint short of placing the suspect in custody constitutes a permissible investigative detention, nor that restraint equivalent to a formal arrest will in every case be impermissible for a detention that is justified only by reasonable suspicion. In some circumstances, officer conduct that does not include all the earmarks of an arrest may be unreasonable in comparison to the justification for the investigative detention; and conversely, the imposition of restraints on the individual's freedom that rise to the equivalent of arrest may be reasonable during an investigative detention where such action is justified by the surrounding circumstances, including the need to safeguard officers from injury.

Thus, in *State v. Frank,* 133 Idaho 364, 986 P.2d 1030 (Ct.App.1999), we held that handcuffing the detainee and placing him in a patrol car during an investigative detention was reasonable where a single officer was conducting an investigation of a possible burglary at night in a dimly lit and unfamiliar location and, based upon a witness's report, there were two other perpetrators of the burglary who were not yet accounted for. Because the officer justifiably believed that his safety was in danger, we held that handcuffing the first suspect that he encountered and placing him in the patrol car while the officer searched and secured the surrounding area was reasonable. *Id.* at 368, 986 P.2d at 1034. We concluded that even though this level of restraint amounted to "custody" for purposes of applying the *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) requirement that the suspect be notified of his rights prior to questioning, the restraints did not exceed the permissible bounds of an investigative detention for Fourth Amendment purposes. *Frank,* 133 Idaho at 368–69, 986 P.2d at 1034–35.

Likewise, in *State v. DuValt,* 131 Idaho 550, 961 P.2d 641 (1998), the Idaho Supreme Court determined that the use of handcuffs was a valid means to execute an investigatory stop where officers reasonably believed that occupants of the car could pose a danger to officer safety. *Id.* at 554, 961 P.2d at 645. In *Pannell,* 127 Idaho 420, 901 P.2d 1321, on the other hand, the Supreme Court held that an officer employed a degree of force which exceeded that justified for an investigatory detention when the officer handcuffed an individual who was stopped as a result of a reported domestic disturbance. Thus, the question as to whether the Fourth Amendment was violated in the course of an investigative detention is not automatically answered by an assessment that police tactics did or did not amount to a de facto arrest.

United States Supreme Court decisions indicate that police conduct which is *less intru-*

*sive* than a de facto arrest may nevertheless be unreasonable for an investigative detention. Indeed, *Terry* itself states that a detention based only on reasonable suspicion must be conducted in a manner that is "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. Later, in *Royer*, the Supreme Court suggested that both the length of the stop and the investigative methods employed by the police were significant when it noted that a detention must "last no longer than is necessary to effectuate the purpose of the stop," and that "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Royer*, 460 U.S. at 500, 103 S.Ct. at 1325, 75 L.Ed.2d at 238. Partially in reliance on *Royer*, we have held that the "intensity" of the detention—that is, the reasonableness and intrusiveness of the investigative methods employed by the police—is a significant factor in determining whether a detention has become unreasonable. *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct.App.2000).

In decisions since *Royer*, however, the United States Supreme Court has indicated that, absent a de facto arrest, the duration of an investigative detention is the primary factor that may render the detention unreasonable. In *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), involving an investigatory stop in an airport, the defendant argued that, in violation of the *Royer* standard, the police had not used the least intrusive means to verify or dispel their suspicion. The Court said, however, that *Royer's* requirement of the least intrusive means "was directed at the length of the investigative stop, not at whether the police had a less intrusive means to verify their suspicions." *Sokolow*, 490 U.S. at 11, 109 S.Ct. at 1587, 104 L.Ed.2d at 12.

A like explanation was given in *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), where the Supreme Court was asked to determine whether the use of a drug detection canine during a lawful traffic stop transformed that stop into an illegal detention. The Court said that a seizure of a driver that is justified solely by the interest in issuing a warning ticket "can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* at 407, 125 S.Ct. at 836, 160 L.Ed.2d at 846. Because one officer walked the dog around the driver's vehicle while another officer was in the process of writing the warning ticket, there was no lengthening of the traffic stop. The defendant argued that the stop nevertheless became unreasonable because the use of the dog shifted the purpose of the detention from a traffic stop into a drug investigation. The Court rejected that argument. It held that the use of the dog to sniff the exterior of the car while the defendant was lawfully seized for a traffic violation did not infringe on any privacy interest.

Another pertinent decision, although it did not involve an investigative detention, is *Muehler v. Mena*, 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005). In that case, as police were executing a search warrant, they detained the occupants of the premises to be searched, including Mena. Mena was placed in handcuffs, and while others conducted the search, officers questioned her about her immigration status. Mena ultimately brought an action against members of the police detachment on grounds that her Fourth Amendment rights had been violated by the use of handcuffs during her detention and by their questioning concerning her immigration status. The Court began by recognizing prior holdings that officers executing a search warrant for contraband have authority to detain occupants of the premises while the search is conducted. After holding that employment of handcuffs was a reasonable use of force under the circumstances, the Court turned to Mena's argument that her Fourth Amendment rights were violated by the questioning about her immigration status when officers had no independent reasonable suspicion that she was in this country illegally. The Court determined that this questioning was irrelevant, stating:

'[M]ere police questioning does not constitute a seizure.' '[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of

that individual; ask to examine the individual's identification; and request consent to search his or her luggage.' As the Court of Appeals did not hold that the detention was prolonged by the questioning, there was no additional seizure within the meaning of the Fourth Amendment. Hence, the officers did not need reasonable suspicion to ask Mena for her name, date and place of birth, or immigration status.

*Id.* at 101, 125 S.Ct. at 1471, 161 L.Ed.2d at 308 (citations omitted). Thus, it appears that under current United States Supreme Court interpretation, when a suspect is otherwise being reasonably detained, the Fourth Amendment is not infringed by the officer's interrogating the suspect about possible criminal activity unrelated to the justification for the detention. This is consistent with our prior decisions holding that general questioning on topics unrelated to the purpose of the stop is permissible so long as it does not expand the duration of the stop. *Parkinson,* 135 Idaho at 362, 17 P.3d at 306; *State v. Silva,* 134 Idaho 848, 853, 11 P.3d 44, 49 (Ct.App.2000).

In light of the foregoing authorities, particularly *Muehler,* we conclude that the district court erred in holding that the Fourth Amendment was violated when, during the stop for a traffic infraction, officers asked intrusive, disconcerting questions and informed Stewart that he was under investigation for drug offenses. The district court specifically found that the duration of the stop was reasonable and was not extended by the questioning. *Muehler* compels a conclusion that the officers' informing Stewart that he was the subject of a narcotics investigation and questioning him about the no-contact order did not infringe a Fourth Amendment interest.

The district court also found the presence of five police officers in four vehicles to be a disproportionate show of force for a routine traffic stop. While excessive police presence at the scene of an otherwise routine traffic stop might be a factor in analyzing the reasonableness of a detention, the defendant cites no case, and we are aware of none, in which the presence of multiple officers, standing alone, rendered an investigative detention unreasonable. *Cf. DuValt,* 131 Idaho 550, 961 P.2d 641 (use of handcuffs did not transform the investigative detention into an arrest when vehicle contained three uncooperative occupants suspected of drug activity, even when five police officers on the scene). The district court here understandably made an effort to apply our statement in *Parkinson* that a Fourth Amendment violation may occur due to the "intensity" as well as the duration of the detention. *Parkinson,* 135 Idaho at 361, 17 P.3d at 305. That statement in *Parkinson* must be deemed circumscribed, however, by the United States Supreme Court's subsequent *Muehler* opinion. We therefore are constrained to hold that the district court erred in concluding that Stewart was illegally detained and in excluding evidence on that basis.

**B. Voluntariness of Consent**

■ We next address the district court's alternate holding that the search was unlawful because Stewart's consent was not given voluntarily.

■ When the State's justification for a warrantless search is that the defendant gave consent, the State must prove by a preponderance of the evidence that the consent was voluntary rather the result of duress or coercion, direct or implied. *Schneckloth,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. We stated the applicable analysis in *State v. Jaborra,* 143 Idaho 94, 137 P.3d 481 (Ct.App. 2006):

A voluntary decision is one that is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth,* 412 U.S. at 225, 93 S.Ct. at 2046, 36 L.Ed.2d at 861. *See also Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, (1961). An individual's consent is involuntary, on the other hand, "if his will has been overborne and his capacity for self-determination critically impaired." *Id.* In determining whether a subject's will was overborne in a particular case, the court must assess "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047, 36

L.Ed.2d at 862. Thus, whether consent was granted voluntarily, or was a product of coercion, is a factual determination to be based upon the surrounding circumstances, accounting for subtly coercive police questions and the possibly vulnerable subjective state of the party granting the consent to a search. *Id.* at 229, 93 S.Ct. at 2048, 36 L.Ed.2d at 863; *Hansen,* 138 Idaho at 796, 69 P.3d at 1057; *Dominguez,* 137 Idaho at 683, 52 P.3d at 327.

A determination of voluntariness does not turn "on the presence or the absence of a single controlling criterion." *Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047, 36 L.Ed.2d at 862. Factors to be considered include whether there were numerous officers involved in the confrontation, *Castellon v. United States,* 864 A.2d 141, 155 (D.C.2004); *United States v. Jones,* 846 F.2d 358, 361 (6th Cir.1988); the location and conditions of the consent, including whether it was at night, *United States v. Mapp,* 476 F.2d 67, 77–78 (2d Cir.1973); whether the police retained the individual's identification, *United States v. Chemaly,* 741 F.2d 1346, 1353 (11th Cir.1984); whether the individual was free to leave, *Ohio v. Robinette,* 519 U.S. 33, 39–40, 117 S.Ct. 417, 421–22, 136 L.Ed.2d 347, 354–55 (1996); *Chemaly,* 741 F.2d at 1353; *State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App.2002); and whether the individual knew of his right to refuse consent, *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. at 2058–59, 36 L.Ed.2d at 875; *Chemaly,* 741 F.2d at 1353; *State v. Jones,* 126 Idaho 791, 793, 890 P.2d 1214, 1216 (Ct. App.1995). Although the presence of multiple police officers does not, standing alone, establish coercion, and there is no requirement that police inform the individual that he is free to leave or that he has a right to refuse consent, these factors are nevertheless relevant when viewing the totality of the circumstances. *See Robinette,* 519 U.S. at 39–40, 117 S.Ct. at 421–22, 136 L.Ed.2d at 354–55; *Schneckloth,* 412 U.S. at 248, 93 S.Ct. at 2058, 36 L.Ed.2d at 875; *Jones,* 846 F.2d at 361; *Chemaly,* 741 F.2d at 1353; *Castellon,* 864 A.2d at 155; *Gutierrez,* 137 Idaho at 651, 51 P.3d at 465; *Jones,* 126 Idaho at 793, 890 P.2d at 1216.

The trial court is the proper forum for the "careful sifting of the unique facts and circumstances of each case" necessary in determining voluntariness. *Schneckloth,* 412 U.S. at 233, 93 S.Ct. at 2050, 36 L.Ed.2d at 866. Even though the evidence may be equivocal and somewhat in dispute, if the trial court's finding of fact is based on reasonable inferences that may be drawn from the record, it will not be disturbed on appeal. *State v. Post,* 98 Idaho 834, 837, 573 P.2d 153, 156 (1978), *overruled on other grounds, State v. Bottelson,* 102 Idaho 90, 625 P.2d 1093 (1981). In short, whether a consent to a search was voluntary is a question of fact, and our standard of review requires that we accept a trial court's factual findings unless they are clearly erroneous. *Hansen,* 138 Idaho at 795, 69 P.3d at 1056; *State v. McCall,* 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001). Findings will not be deemed clearly erroneous if they are supported by substantial evidence in the record. *State v. Benson,* 133 Idaho 152, 155, 983 P.2d 225, 228 (Ct.App.1999).

*Jaborra,* 143 Idaho at 97–98, 137 P.3d at 484–85.

In the case currently before us, the district court found that Stewart's consent was involuntary because:

> ... Stewart was met with a show of force, in that his traffic stop was the scene not only of a patrol car with its flashing lights, but also the nearly immediate appearance of three additional vehicles, carrying four additional law enforcement officers. At the time that he was questioned by the detectives, Stewart was not free to go. His license and registration had been taken by Officer Boll. He was asked a question about his ex-wife and a restraining order, a question that had no purpose in this context other than to provoke or unsettle him. He was then pointedly told that he was a subject of a drug investigation and that the officers wanted to search his vehicle. In such a setting, the police presence and the nature of the stop had the effect, even if not the intent, of overcoming the Defendant's ability to make "an essentially free and unconstrained" deci-

sion as to whether to allow a search of his vehicle.

Even though there is some equivocal evidence in the record and even though some actions of the officers—taken alone and not in union with the other actions— might not rise to the level of coercion, the Court finds that based upon all the uncontested facts in this record and upon reasonable inferences from those facts that are contested, the totality of the circumstances indicates that Stewart's consent was coerced, as part and parcel of the unreasonable increase in the intensity of the traffic stop. At a minimum the State has not met its burden to prove by a preponderance of the evidence that the consent was voluntary.

As noted above, our standard of review requires that we accept these findings unless they are clearly erroneous, and even if the evidence is equivocal and somewhat in dispute, findings and inferences that may be reasonably drawn from the evidence will not be disturbed on appeal. *Jaborra*, 143 Idaho at 97, 137 P.3d at 484. Here, the district court's findings note the presence of many of the factors identified in *Jaborra* as bearing upon the determination of voluntariness, including the excessive number of officers who converged at the scene, the fact that Stewart's license and registration had been taken and he was not free to leave, and the fact that Stewart was not informed of his right to refuse consent. The court also found that the police questioned Stewart about matters unrelated to the traffic stop, including the no contact order, in a manner that was intended to be and was unsettling and disconcerting, as a prelude to seeking his consent to a search of the vehicle. Although the evidence of police coercion here is equivocal and the coercive conduct subtle, they are sufficient to support the trial court's findings. Therefore, the district court's determination that the State did not meet its burden of proving voluntary consent must be affirmed.

## III.

## CONCLUSION

The district court erred in holding that the traffic stop evolved into an illegal detention, but the district court's factual finding that Stewart's consent to a search of his vehicle was not voluntary is supported by the record. Therefore, the order suppressing evidence acquired as fruit of the search is affirmed.

Chief Judge GUTIERREZ and Judge PERRY concur.

