# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 38869

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 753 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 4, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JEFFREY EUGENE THIES, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Order denying motion to suppress evidence, affirmed.

Sara B. Thomas, State Appellate Public Defender; Erik R. Lehtinen, Chief, Appellate Unit, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Jeffrey Eugene Thies appeals from his criminal convictions of trafficking in methamphetamine, two counts of injury to a child, possession of a controlled substance, possession of drug paraphernalia, and concealment of evidence. Thies asserts that the district court erred in denying his motion to suppress evidence. We affirm.

## I.

## BACKGROUND

On the evening of August 11, 2010, a driver made a 911 call to report that he had observed people fighting and yelling in another car while the car was at an intersection, that someone had thrown objects out of the car's window, striking his car, and that a teenaged passenger had jumped out, and then reentered the car. The reporting caller followed the car to a high school parking lot, and at least three law enforcement officers arrived at the school within a few minutes. When the first officer arrived, the two adult occupants from the car, Jeffrey Thies

1

and Patricia Price, were standing in the parking lot, and the two teenaged passengers had already entered the school to attend a class.

The officers placed Thies and Price in handcuffs and began to question them separately. Price explained that she and Thies had been arguing, that she threw candy and a lighter out of the window during the argument, and that her son got out of the car to retrieve the lighter. Both Thies and Price told the officers that their argument did not involve physical violence. Officer Vogt ran a background check on Thies, discovered that his driving privileges had been suspended, and began to question him about driving on a suspended license. While doing so, Officer Vogt noticed that Thies appeared to become nervous when another officer began looking into the windows of Thies's car. Officer Vogt asked for Thies's consent to search the car, which was denied. Officer Vogt called for a narcotics detection unit, at which point Thies was placed in the backseat of Officer Vogt's patrol car. Officer Lindley subsequently arrived with a dog trained to detect the presence of narcotics. The dog alerted on the passenger door of Thies's car. Officers then searched the car and discovered marijuana, methamphetamine, and drug paraphernalia.

Thies was charged with numerous offenses including possession of marijuana, Idaho Code § 37-2732(c), possession of drug paraphernalia, I.C. § 37-2734A, and trafficking in methamphetamine, I.C. § 37-2732B(a)(4). Thies filed a motion to suppress the evidence found in his car on the ground that the officers unlawfully extended the duration of Thies's detention to allow time for a drug detection dog to arrive. The district court denied the suppression motion, and the case proceeded to a jury trial. Thies was ultimately convicted of multiple criminal offenses. He appeals, asserting that the district court erroneously denied his suppression motion.

## II.

## ANALYSIS

Thies asserts that his detention was unlawfully extended while officers awaited the arrival of the drug dog, and that the evidence discovered as a result of the unlawful detention must be suppressed. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. An investigative detention is a seizure of limited duration to investigate suspected criminal activity and does not offend the Fourth Amendment if it is based upon specific articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Terry v. Ohio*, 392

U.S. 1, 21 (1968); *State v. Stewart*, 145 Idaho 641, 644, 181 P.3d 1249, 1252 (Ct. App. 2008); *State v. Knapp*, 120 Idaho 343, 347, 815 P.2d 1083, 1087 (Ct. App. 1991). In determining whether a detention that was initially justified later became unreasonable, the court is to consider the duration of the detention and the law enforcement purposes served. *United States v. Sokolow*, 490 U.S. 1, 10-11 (1989); *State v. DuValt*, 131 Idaho 550, 554, 961 P.2d 641, 645 (1998); *Stewart*, 145 Idaho at 646-47, 181 P.3d at 1254-55. It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Royer*, 460 U.S. at 500. Any evidence seized pursuant to an unlawful stop or an unreasonable detention is "fruit of the poisonous tree" and is, therefore, inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *State v. Bordeaux*, 148 Idaho 1, 6, 217 P.3d 1, 6 (Ct. App. 2009).

When a decision on a suppression motion is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). However, the reasonableness of a given search or seizure based on those facts is a question of law over which we exercise independent review. *State v. Linenberger*, 151 Idaho 680, 683, 263 P.3d 145, 148 (Ct. App. 2011); *State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct. App. 1998).

In this case, the parties generally agree that Officer Vogt called for a drug dog approximately twelve minutes after arriving at the school parking lot, and that the drug dog ultimately arrived and alerted to the presence of drugs approximately twenty-five to thirty minutes after Officer Vogt's arrival. Thies does not dispute that the officers had reasonable suspicion to temporarily detain him to investigate whether an act of domestic violence or malicious injury to property had occurred, or to investigate and prepare a citation for driving without privileges following the results of Thies's background check. Instead, Thies asserts that the officers completed their domestic violence and malicious injury to property investigations

3

before the drug dog was called, and that Officer Vogt stalled the completion of a citation for driving without privileges in order to allow time for the drug dog to arrive.

Thies points to various pieces of evidence in the record in support of his view of the facts. However, the district court rejected Thies's factual assertion that the domestic violence and malicious injury to property investigations were completed before Officer Vogt called for a drug dog, and his assertion that the officers were stalling while the drug dog was in transit. The court found that the officers were actively investigating each of those crimes during that time. Under our standard of review, we will accept the district court's findings if they are supported by substantial evidence.

At the suppression hearing, Officer Vogt testified that he was the first of several officers to respond to reports that Thies had been involved in a tumultuous argument that included items being thrown from Thies's car, and children jumping out of the car at an intersection. When Officer Vogt arrived, Thies appeared agitated and initially refused to comply with Officer Vogt's various commands, but the officer was eventually able to place Thies in handcuffs. At least three other officers arrived shortly thereafter. Officer Vogt remained with Thies, questioned him about the incident in his car, ran a background check on him, discovered that his driving privileges had been suspended, and called for the assistance of a drug dog. The other officers questioned other witnesses including Price, at least one of the two teenaged children who had come back out of the school, and the motorist who had called in the report. Officer Vogt testified that the other officers were still investigating all three potential crimes while the drug dog was in transit. Specifically, Officer Vogt and the officers "were still communicating with each other trying to determine what happened" and trying to determine what citations would be appropriate. Officer Vogt denied extending the investigation to allow time for the drug dog to arrive.

The officer's testimony is at least partially corroborated by various audio recordings made by the officers during the course of their investigations. On one recording, which was apparently made shortly after Officer Vogt called for a drug dog, two officers can be heard discussing damage to the caller's car that was allegedly caused by the items thrown out of Thies's vehicle. On another recording, an officer can be heard discussing a littering citation with Price shortly before the drug dog arrived. These audio recordings suggest that investigations were ongoing well after Thies claims that they had been concluded. Having reviewed Officer

4

Vogt's testimony and the various audio recordings made by the police officers, we conclude that there is substantial evidence to support the district court's finding that the investigations for malicious injury to property and domestic violence were ongoing while the drug dog was in transit.

Officer Vogt was tasked with overseeing investigations into at least three possible crimes. These investigations were being conducted by at least four officers and involved at least five witnesses, including Thies. With so much going on in a short amount of time, it is unsurprising that the malicious injury to property and domestic violence investigations were not completed within twelve minutes of Officer Vogt's arrival at the school parking lot as Thies asserts, or that Officer Vogt was not able to immediately complete a citation for driving without privileges after learning that Thies's license was suspended. Under these circumstances, we agree with the district court that the detention was not unlawfully extended. Thies's detention was not made unreasonable by the passage of time between his initial detention and the drug dog's arrival twenty-five to thirty minutes later. The various investigations did not exceed the scope of their underlying justifications, and thus, no Fourth Amendment violation occurred.

The district court's order denying Thies's suppression motion is affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**