# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47418

STATE OF IDAHO,

        Plaintiff-Respondent,

v.

ZACHARY POLK NELSON,

        Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Filed: September 20, 2021

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

SUBSTITUTE OPINION
THE COURT'S OPINION
DATED JUNE 2, 2021, IS
HEREBY WITHDRAWN

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail; Hon. Patrick J. Miller, District Judges.[1]

Judgment of conviction for trafficking in methamphetamine, <u>vacated</u>; order denying motion to suppress, <u>reversed</u>; and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Zachary Polk Nelson appeals from his judgment of conviction for trafficking in methamphetamine. Nelson asserts the district court erred in denying his motion to suppress evidence obtained following an investigatory detention. We conclude that reasonable suspicion did not support Nelson's detention and reverse the court's denial of his suppression motion.

---

[1] The Honorable Deborah A. Bail entered the order denying the motion to suppress at issue in this case. The Honorable Patrick J. Miller presided over the subsequent jury trial and entered the judgment of conviction.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Nelson with trafficking in methamphetamine, Idaho Code § 37-2732B(a)(4)(A),[2] after Officer Esparza detained Nelson outside a hotel in Meridian; a drug dog alerted on his truck; and officers found over 36 grams of methamphetamine, a digital scale with drug residue and several clear plastic baggies in a purple Crown Royal bag, and more digital scales in a duffle bag in the truck. Nelson moved to suppress this evidence, arguing Officer Esparza did not have reasonable suspicion to detain Nelson.

The district court held a suppression hearing at which Officer Esparza was the only witness to testify. The video from Officer Esparza's body camera, which recorded his encounter with Nelson, was admitted in evidence. After the hearing, the court issued a written decision denying Nelson's motion. In its decision, the court found the following facts as they relate to this appeal:

> On December 28, 2018, the Meridian Police Department received a call for service at [a hotel] from hotel management.[3] The hotel advised that they had received complaints from guests about sex and drug activity involving a woman and several men in room 148 in the hotel. The police were provided with the license plate numbers of two vehicles associated with the room, a Ford Explorer and a Chevy truck. Several officers were dispatched along with one with a drug detection dog immediately after the call was received. Officer Brandon Esparza was one of the first officers who responded. Officer Esparza quickly found the Chevy truck parked in front of the hotel. He took a picture of it as two men exited the hotel and approached the truck. Officer Esparza introduced himself. Initially, he was alone although other officers showed up shortly after his first contact with [Nelson]. [Nelson] approached the officer and shook his hand. Officer Esparza asked them if they were staying at the hotel. [Nelson] said that they were. Officer Esparza asked for ID and [Nelson] went towards the driver's door of the truck. [Nelson] explained that his wallet was inside. Officer Esparza noticed that [Nelson] was wearing a knife and asked him for it. [Nelson] was fiddling with his pockets. Officer Esparza explained that they had a call and were checking on it. [Nelson] had a bulky, purple velvet Crown Royal bag which filled his entire hand.

---

[2]     The State also charged Nelson with frequenting a place where controlled substances were known to be located, a misdemeanor, I.C. § 37-2732(d). The jury, however, found Nelson not guilty of this charge.

[3]     At the suppression hearing, Officer Esparza described "[t]he calling party" as "hotel management and staff" and did not identify any specific individual who made the call, although at the preliminary hearing, he testified he "believed" the caller was the "hotel manager."

Officer Esparza asked [Nelson] to leave the bag while he was getting his identification out of the truck cab. [Nelson] placed the bag in the bed of the truck. [Nelson] got his identification. The officer continued to ask questions about who the men were staying with and got the names of both men.

After "about six minutes into the encounter," the drug dog alerted on Nelson's vehicle.

The district court ruled that Officer Esparza briefly detained Nelson. Although the court did not expressly rule that Officer Esparza had reasonable suspicion for this detention, it implicitly reached this conclusion, stating that "it was the kind of brief, investigative detention contemplated by *Terry*."[4] Specifically, the court ruled:

> There was a brief, investigative detention of [Nelson]. No weapons were ever drawn. No voices were ever raised. No sirens or police lights were activated. Information gained as soon as Officer Esparza arrived allowed him to determine that he was talking to the men associated with the call about drug activity occurring out of Room 148. Officer Esparza never drew his weapon and never engaged in any kind of threatening behavior. Although the other officers showed up as the encounter continued, they did not display any weapons and did not even approach [Nelson]. Although Officer Esparza's vehicle was parked several feet behind another vehicle and was near [Nelson's] truck, it did not block the ability to exit although it would have been little more difficult to pull out. The entire *Terry* stop lasted six minutes before it moved from a *Terry* stop to a probable cause arrest. This was a very brief investigative detention. Nothing was abnormally drawn out. No voices were raised nor were any weapons drawn. It was the kind of brief, investigative detention contemplated by *Terry*.[5]

After the district court denied Nelson's motion to suppress, Nelson proceeded to a jury trial, and a jury found him guilty of trafficking in methamphetamine. Nelson timely appeals the court's denial of his motion to suppress.

## II.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by

---

[4]     *Terry v Ohio*, 392 U.S. 1 (1968).

[5]     The issue Nelson raised in his suppression motion was whether Officer Esparza had reasonable suspicion to detain Nelson. Neither the length of that detention nor the reasonableness of Officer Esparza's actions in effectuating that detention (e.g., use of weapons, tone of voice, or use of lights or sirens) are relevant to that inquiry. *See State v. Stewart*, 145 Idaho 641, 644-47, 181 P.3d 1249, 1252-55 (Ct. App. 2008) (explaining considerations to determine whether investigative detention based on reasonable suspicion is conducted in manner reasonably related in scope to circumstances originally justifying detention).

3

substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). Determinations of reasonable suspicion are reviewed de novo. *State v. Bonner*, 167 Idaho 88, 93, 467 P.3d 452, 457 (2020).

## III.

## ANALYSIS

On appeal, Nelson argues Officer Esparza lacked reasonable suspicion to detain Nelson. The Fourth Amendment's reasonableness requirement applies to brief investigatory detentions. *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009). To determine whether such a seizure is reasonable, a court must first determine whether the officer's action was justified at its inception. *Id.* If an officer has a reasonable, articulable suspicion a person has committed or is about to commit a crime, a limited, investigatory detention is permissible. *Id.* "Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts." *Id.* "The quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause." *Id.* The reasonable suspicion standard, however, requires more than mere speculation or instinct on the part of the officer and must be evaluated on the totality of the circumstances at the time of detention. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999); *see also Bishop*, 146 Idaho at 811, 203 P.3d at 1210 (requiring more than "hunch" or "inchoate and unparticularized suspicion"). An officer may draw reasonable inferences from the facts in his possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). "Whether an officer possessed reasonable suspicion is evaluated based on the totality of circumstances known to the officer at or before the time of the stop." *Bishop*, 146 Idaho at 811, 203 P.3d at 1210.

### A.     Nelson Preserved for Appeal Whether the Call Gave Rise to Reasonable Suspicion

In his opening brief, Nelson submits this Court should treat the call from "the hotel management and staff" as "an anonymous tip that simply makes a criminal accusation and [is] therefore unreliable." Alternatively, Nelson argues that "even if this Court considers the tip to be

4

from a citizen-informant, the content of the tip and the informants' basis of knowledge [does] not provide reasonable suspicion." Regardless, Nelson argues that "whether considered anonymous or made by a citizen-informant, [the call] failed to provide Officer Esparza with reasonable suspicion to stop [Nelson]." In response to these arguments, the State argues Nelson's claim that the call "was legally 'anonymous' or otherwise unreliable is not preserved." On reply, Nelson acknowledges he failed to preserve the argument that the call was "anonymous" and withdraws that argument. He continues to maintain, however, that "the tip and [Officer Esparza's] observations did not provide reasonable suspicion."

In light of Nelson's concession that he failed to preserve for appeal his argument that the call was "anonymous," we do not analyze the call as an anonymous call. *See id.* at 812, 203 P.3d at 1211 (ruling "tip" from "anonymous informant" will generally not give rise to reasonable suspicion). Nelson, however, has preserved his argument that the call from the hotel was insufficient to give rise to reasonable suspicion. During the preliminary hearing,[6] Officer Esparza testified that Nelson "was just being investigated based off the information we were given by the hotel staff" and that the officers responding to the call did not contact the hotel until after Officer Esparza had already contacted Nelson. During the suppression hearing, Officer Esparza again testified that he was relying on the content of the call to investigate Nelson. Then, in support of Nelson's suppression motion, Nelson's defense counsel argued "the call was vague. It doesn't list particular criminal activity as [it] relates to [Nelson]." While this argument does not explicitly reference reasonable suspicion or the reliability of the information the call provided, the crux of the suppression motion was whether the call provided Officer Esparza with reasonable suspicion to detain Nelson. As a result, Nelson has preserved that issue for appeal.

On appeal, Nelson relies on *Bishop* to argue the call's content from the hotel and the caller's basis of knowledge did not provide reasonable suspicion and to analyze the "reliability" of the call for that purpose. Indeed*, Bishop* is the authority which articulates the analysis for whether information a police officer receives from a third party about criminal activity gives rise to reasonable suspicion. *Id.* at 811-12, 203 P.3d at 1210-11. Generally, that analysis references "reliability." For example, *Bishop* provides that "a tip must possess adequate indicia of reliability in order to justify a *Terry* stop." *Bishop*, 146 Idaho at 811-12, 203 P.3d at 1210-11

---

[6]  During the suppression hearing, the district court took judicial notice of Officer Esparza's testimony during the preliminary hearing.

Regardless, we do not need to analyze the "reliability" of the information the call provided or to address the State's assertion that Nelson cannot argue "reliability" on appeal. Rather, we analyze the call as one from "a known-citizen informant"[7] to determine whether the information from the call gave rise to reasonable suspicion. Regarding this analysis, *Bishop* provides:

> [When] a tip is received from a known citizen-informant, the tip is generally sufficient to establish reasonable suspicion. . . . Tips made by known citizen-informants are presumed reliable . . . . Accordingly, independent police verification of such tips is generally not necessary. *Still, under the totality of the circumstances analysis, the content of the tip and the informant's basis of knowledge remain relevant in determining whether the tip gave rise to reasonable suspicion.*

*Id.* at 812, 203 P.3d at 1211 (citations omitted; emphasis added). Accordingly, we analyze the call's contents and the caller's basis of knowledge under the totality of circumstances to determine whether the call and Officer Esparza's observations gave rise to reasonable suspicion to detain Nelson.

**B.    Officer Esparza Lacked Reasonable Suspicion to Detain Nelson**

Nelson argues that the call from "hotel management and staff" and his conduct, which Officer Esparza observed before detaining him, did not satisfy the reasonable suspicion standard. In response, the State argues "ample reasonable suspicion" justified Nelson's "brief detention." We agree with Nelson that Officer Esparza lacked reasonable suspicion to detain Nelson based on the totality of circumstances known to Officer Esparza at the time of the detention.

Exactly when Officer Esparza detained Nelson is a key fact necessary for determining whether Officer Esparza had reasonable suspicion for the detention. The district court ruled generally that Nelson "was briefly detained after it was determined that he was the driver of the truck associated with the room and he admitted staying there." While this ruling does not precisely indicate the point at which Officer Esparza detained Nelson, Officer Esparza testified-- and both the parties agree--that he detained Nelson when Officer Esparza told Nelson not to get in the truck:

> Q.    At that point, would you say that you had detained him so that you could further investigate what was going on?

---

[7]    The State acknowledges "everyone now apparently agrees the hotel manager was a known citizen."

6

A.  Yeah, at that point once I had told him he couldn't get in his truck, you know, I had detained him and his vehicle was connected with a room that we were investigating, so at that point it was a detention, reasonable suspicion that he was involved with what was going on in the room.

The district court also did not include in its factual findings when Officer Esparza told Nelson he could not get in the truck. A review of the video from Officer Esparza's body camera, however, clearly shows that detention. Specifically, the video shows that while Officer Esparza is standing behind and taking pictures of a gray Chevy truck, Nelson and another individual exit the hotel's back door. Nelson shakes Officer Esparza's hand as Officer Esparza introduces himself. Officer Esparza inquires, "Where are you guys coming from?" to which Nelson responds, "The hotel." Further, Officer Esparza inquires, "You guys staying here?" to which Nelson responds, "Yeah." At that point, Nelson turns towards the truck as he retrieves keys from his pocket, and Officer Esparza states, "Hey don't go anywhere right now. Do you guys have I.D. with you? Stay out of your vehicle for me."

At that moment, Officer Esparza detained Nelson. At that time, Officer Esparza knew that Nelson appeared to be associated with the gray Chevy truck; he was carrying a "purple, like Crown Royal bag"; and he claimed to be staying at the hotel. Further, Officer Esparza knew certain information from the call from the hotel which had reported receiving "complaints" from hotel "guests" about suspicious activity in a hotel room. Regarding that information, Officer Esparza testified:

Q.  Where did the service call come from, or who was the calling party?
A.  The calling party was hotel management and staff calling about a room there at the [hotel]. They had complaints from the guests. The complaints were--it was Room 148. They were complaining that there were sexual noises coming from the room and drug activity coming from the room, and they had stated that there was a female in the room along with up to five males in the room.
Q.  Okay. Did you have information about potential vehicles that were associated with that room?
A.  Yeah. In the call it stated that there was a Ford Explorer and also a gray Chevy truck that had Canyon County plates on it.

Explaining the scope of his reasonable suspicion, Officer Esparza testified, "I had reasonable suspicion [Nelson] was involved with this room because of his involvement with the truck that was initially in the call." Further, Officer Esparza testified:

Q.  And that whole suspicion was that you were investigating loud sex noises and potential vague drug activity?

7

A.     Correct.

Based on the evidence presented at the suppression hearing, the State failed to meet its burden to prove Officer Esparza had reasonable suspicion to detain Nelson. Construing the call from the "hotel management and staff" based on "complaints" from hotel "guests" as a "tip" from "a known citizen-informant," we conclude the content of the information and the caller's basis of knowledge were insufficient to establish reasonable suspicion to detain Nelson. For example, the hotel employee did not provide a description of anyone associated with Room 148, of any suspect's location other than the room generally, or of what the complaining "guests" personally observed or heard other than "loud sex noises." Also, there is no evidence of the complaining hotel guests' basis of knowledge, reliability, or veracity. *See Bishop*, 146 Idaho at 813-14, 203 P.3d at 1212-13 (ruling "the original hearsay declarant's basis of knowledge, reliability, and veracity are also factors under the totality of the circumstances analysis"). Further, Officer Esparza did not corroborate that the gray Chevy truck was indeed associated with Room 148. Rather, he testified only that the truck was a "potential" vehicle associated with Room 148. No evidence indicates how the truck was associated with Room 148. As Officer Esparza testified:

> Q.     You get a call that says this vehicle is associated with the room, but you don't know how that vehicle has been associated with the room, whether management has seen somebody leave that room and get in that vehicle, you're not sure how that connection is made; correct?
> A.     Correct.

Likewise, no evidence indicates Nelson was actually associated with Room 148. The caller never associated Nelson with the room by name or by description, and Officer Esparza never inquired whether Nelson had actually been in Room 148 before detaining him:

> Q.     And in the course of your interaction with [Nelson], he didn't indicate that he was in Room 148; correct?
> A.     I don't believe he said that exact room.
> . . . .
> Q.     And at that time, you don't see [Nelson] walk out of any room. You contact him outside the building; correct?
> A.     Yes. He exited the building, yes.
> Q.     And your position was at the time you contact [Nelson], you wouldn't have been able to see which hotel room he came out of; correct?
> A.     That's correct.

Based on the evidence presented, Officer Esparza lacked "specific, articulable facts" from which he could draw rational inferences to establish reasonable suspicion that Nelson had

8

committed a crime while in Room 148. *See Bishop*, 146 Idaho at 811, 203 P.3d at 1210 ("Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts."). Further, Officer Esparza conceded he did not have reasonable suspicion that Nelson was committing a crime when Officer Esparza detained Nelson:

> Q.    So at the time you see [Nelson], you had no reasonable suspicion to believe that he was committing a crime at the time you detain[ed] him; correct?
>
> A.    He wasn't committing any crimes at the time, but he was associated with a vehicle that was associated with a room that we were investigating.

Based on the totality of circumstances known to Officer Esparza at the time he detained Nelson, we hold Officer Esparza lacked reasonable suspicion for such detention.

This case is distinguishable from other cases in which Idaho appellate courts have concluded a "citizen-informant's tip" was sufficient to establish reasonable suspicion. For example in *Bishop*, "the informant" based his "tip" on the report of two carnival workers about Bishop's illegal activity. *Id.* at 808-09, 203 P.3d at 1207-08. The Idaho Supreme Court noted this "informant's tip" provided the workers had personally observed Bishop's attempt to sell them methamphetamine, a detailed description of Bishop, a running report of Bishop's location, and a detailed enough description of the workers for the police to locate them. *Id.* at 815, 203 P.3d at 1214. The Court ruled this detail of information was sufficient to establish reasonable suspicion. *Id.*; *see also State v. Byrum*, 167 Idaho 735, 743, 476 P.3d 402, 410 (Ct. App. 2020) (noting "tipster" revealed personal observation of Byrum's driving, description of Byrum's location, and first-hand observations of events occurring which officer immediately corroborated); *State v. Larson*, 135 Idaho 99, 102, 15 P.3d 334, 337 (Ct. App. 2000) (noting "tipster" provided description of suspect and "first-hand observations" of reported events as they were occurring, and officer's observations partially corroborated "tip").

In contrast to these cases, the caller in this case did not give any description of Nelson, any information about his location, and provided no personal observations of Nelson committing any illegal conduct. As discussed above, the information from the call together with Officer Esparza's observations were insufficient to establish reasonable suspicion. Accordingly, based on the totality of circumstances known to Officer Esparza at the time he detained Nelson, Officer Esparza lacked reasonable suspicion for that detention.

## IV.
## CONCLUSION

The district court erred by concluding Officer Esparza had reasonable suspicion to conduct an investigative detention. Accordingly, we reverse the court's ruling denying Nelson's motion to suppress, vacate the judgment of conviction, and remand for further proceedings consistent with this opinion.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.